UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x
                              :
                              :
UNITED STATES OF AMERICA    :
                              :
                              :        03 cr 801(KMW)
           v.            :        Opinion & Order
                              :
                              :
MICHAEL DIGGINS           :
                              :
                              :
------------------------------x

WOOD, U.S.D.J.:

     By motion dated March 20, 2008, Defendant Michael Diggins
("Diggins") asks the Court to reduce his sentence from 90 to 84
months imprisonment, pursuant to 18 U.S.C. § 3582(c)(2) and
Amendment 706 to the Sentencing Guidelines ("Guidelines").
Section 3582(c)(2) permits a court to reduce a term of
imprisonment based on a sentencing range subsequently lowered by
the Sentencing Commission ("Commission"); Amendment 706 lowers
the base offense level, and thus the applicable Guidelines
sentencing range, for certain offenses involving cocaine base
("crack cocaine").[1]  The Government agrees that Diggins is

_____

    [1] The Commission adopted Amendment 706 in order to reduce
disparities between Guidelines sentences for offenses involving
powder cocaine and those involving crack cocaine.  See U.S.
Sentencing Guidelines Manual supplement to app. C Amendment 706
(2008).
    These disparities originated in the Anti-Drug Abuse Act of
1986, which established an "100-to-1 drug quantity ratio" in its
mandatory minimum sentences for powder and crack cocaine.

eligible for this sentence reduction, but argues that the reduction is not warranted because Diggins poses a "serious danger to the community."  The Court disagrees.

For the reasons stated below, the Court reduces Diggins's total sentence from 90 months to 84 months imprisonment.

I.  <u>Background</u>

A.  <u>Conviction and Original Sentence</u>

On August 20, 2003, Diggins pled guilty to (1) possession and distribution of crack cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1) (the "drug count"); and (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (the "gun count").

---

Pursuant to the Act, a drug trafficker dealing in crack cocaine is subject to the same mandatory minimum as one dealing in 100 times more powder cocaine.  <u>See</u> <u>Kimbrough v. United States</u>, 128 S.Ct. 558, 566-67 (2007).

The Commission then incorporated this drug quantity ratio into the Guidelines.  As a result, Guidelines sentences for crack cocaine offenses prior to Amendment 706 were three to six times longer than those for powder cocaine offenses involving the same drug weight.  <u>See id.</u>

The Commission has since concluded, however, that these disparities significantly undermine important sentencing objectives.  According to the Commission, the 100-to-1 drug quantity ratio is problematic in many ways, including, <u>inter alia</u>, that it is based on faulty assumptions about the relative harmfulness of crack and powder cocaine; it often results in greater punishments for street level sellers than for importers and major traffickers; and it fosters disrespect for the criminal justice system because of its racial impact.  <u>See id.</u> at 568.

Amendment 706 modestly reduces sentencing disparities for crack and powder cocaine offenses throughout the Guidelines.

2

On February 6, 2004, the Court sentenced Diggins.[2]  The
Court found that a Guidelines range of 30 to 37 months applied to
the drug count,[3] and that a statutory mandatory minimum of 60
months, to be served consecutively, applied to the gun count.
The Court sentenced Diggins to 30 months on the drug count and 60
months on the gun count, for a total sentence of 90 months
imprisonment.

    B.   Amendment 706

Amendment 706 became effective on November 1, 2007, and on
March 3, 2008, the Commission authorized courts to retroactively
reduce sentences in accordance with the amendment.

Pursuant to Amendment 706, the Guidelines range now
applicable to Diggins's drug count is 24 to 30 months;[4] the
mandatory minimum of 60 months applicable to the gun count
remains unchanged.  The parties agree that Diggins is eligible,
pursuant to § 3582(c)(2) and Amendment 706, for a sentence
reduction of up to six months on the drug count, which would

----

[2] The Guidelines were still mandatory at this time.

[3] On the drug count, Diggins's base offense level was 20,
from which the Court subtracted three points for acceptance of
responsibility, for a total offense level of 17.  Diggins's
criminal history category was III, yielding a Guidelines range of
30 to 37 months.

[4] After Amendment 706, Diggins's base offense level is 18,
and his total offense level is 15.  His criminal history category
remains III, yielding an amended Guidelines range of 24 to 30
months.

reduce accordingly his total sentence from 90 months to 84 months imprisonment.

On March 20, 2008, Diggins moved this Court for a sentence reduction.  In response, the Government argues that although Diggins is eligible for a sentence reduction, the Court should deny his motion because of the public safety considerations raised by the nature of his offense, his criminal history, and his post-sentencing conduct.

On August 26, 2008, after reviewing the parties' submissions, the Court ruled that it would delay consideration of Diggins's motion until April 2009 so that it could review more of Diggins's post-sentencing conduct before issuing a decision.[5]

C.  Post-Sentencing Conduct

With regards to Diggins's post-sentencing conduct, the Government argues that the Court should deny Diggins's motion because he has twice been involved in violent altercations during his incarceration.

In its most recent briefing to the Court, the Government

---

[5] In its August 2008 order, the Court also rejected Diggins's argument that, pursuant to United States v. Booker, 543 U.S. 220 (2005), and United States v. Kimbrough, 128 S. Ct. 558 (2007), the Court has the authority to reduce Diggins's sentence below the amended Guidelines range.  The Court concluded that the applicable Guidelines policy statement, Section 1B1.10, which prohibits a court from reducing a defendant's sentence below the amended Guidelines range, is mandatory, and therefore that the Court "lacks power to reduce [Diggins's] sentence for the drug count below 24 months."  See United States v. Diggins, No. 03 CR 801 (KMW), 2008 WL 4054413 (S.D.N.Y. Aug. 27, 2008).

admits, however, that the first of these incidents involves only a "possible fight."  The Government submits the Bureau of Prisons' ("BOP") Investigative Report on the incident, which concludes that there is "not enough evidence determine if there was or was not a physical altercation between" Diggins and another inmate in December 2003.

The parties do not contest that the Government's second alleged incident occurred.  Specifically, in May 2007, Diggins was observed fighting with another inmate.  This fight, however, occurred in the context of large-scale attacks by Latino prisoners against black prisoners throughout the institution. Diggins states that he fought only in order to defend himself, and neither the Government nor the BOP presents any evidence to the contrary.  After the incident, Diggins was transferred to another institution for his own protection.

In support of his motion, Diggins submits evidence of his positive post-sentencing behaviors.  In particular, during his incarceration, Diggins has competed his New York State High School Equivalency Diploma.  He has also completed programs entitled "What a Difference a Job Makes," the "Drug Abuse Education Program," and "Reading in Fundamental."  Additionally, a BOP Report indicates that Diggins might have completed more programs were it not for the fact that there have been multiple institutional lockdowns at the prison he was transferred to after

the May 2007 incident, frustrating the ability of inmates to begin or complete such programs.

II.  <u>Analysis</u>

Diggins is eligible for a sentence reduction of six months. In light of the Government's objection, the Court must decide whether this reduction is warranted.

A.  <u>Legal Standard</u>

1.  <u>Section 3582(c)(2)</u>

As a general rule, a court may not modify a term of imprisonment once it has been imposed.  Section 3582(c)(2), however, provides a narrow exception to this rule.  Pursuant to § 3582(c)(2), a court may modify a term of imprisonment after its imposition "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission."

In such a case, the court "may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

2.  <u>Section 3553(a) Factors</u>

In determining whether a sentence reduction is warranted, and if so, the extent of reduction warranted, a court <u>must</u> consider § 3553(a) factors.  Section 3553(a) states that a court

"shall impose a sentence sufficient, but not greater than necessary" to fulfill certain penological purposes, specifically, the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the sentence that it "sufficient, but not greater than necessary" to fulfill these penological objectives, a court must consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the penological purposes stated above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established by the Guidelines; (5) any applicable Guidelines policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

> 3.  Guidelines Section 1B1.10

In determining whether a sentence reduction is warranted, and if so, the extent of reduction warranted, a court must also consider Guidelines Section 1B1.10, the applicable policy

statement, which limits the circumstances under which, and the extent to which, a court may reduce a sentence based on an amendment to the Guidelines.

The Commentary to Section 1B1.10 provides that in determining whether a sentence reduction is warranted, a court must consider "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment."  In addition, a court may consider post-sentencing conduct of the defendant that occurred after imposition of the original term of imprisonment.  In this case, the Court considers Diggins's post-sentencing conduct, but only to the extent that it impacts the Court's analysis of the § 3553(a) factors and the public safety considerations posed by a reduction in Diggins's sentence.

B.  Application

After fully considering the § 3553(a) factors, public safety considerations, and Diggins's post-sentencing conduct, the Court concludes that Diggins's sentence should be reduced to 84 months.

Although Diggins is eligible for a sentence reduction of six months, the Government argues that Diggins does not warrant this reduction because of public safety considerations.  Specifically, the Government argues that a sentence reduction is inappropriate (1) because of the nature of Diggins's offense and his criminal history; and (2) because of Diggins's post-sentencing conduct.

The Court disagrees with the Government on both of these points.

1. <u>Offense Conduct and Criminal History</u>

The Government first argues that Diggins's offense conduct and criminal history show that he "poses a serious danger to the community," and that, accordingly, the Court should not reduce his sentence.  In support of this argument, the Government describes Diggins's offense, namely that Diggins was "selling crack cocaine on the street while possessing a loaded firearm," and his criminal history, namely that Diggins has prior convictions for violent activity.

The Court is aware of both Diggins's offense conduct and his criminal history, and as the Court noted at Diggins's sentencing, the Court finds both to be quite serious.  Nonetheless, the Court finds that they provide insufficient reason to deny Diggins's motion.

In opposing Diggins's motion, the Government merely points to the conduct, past and present, on which Diggins's Guidelines range is based.  To use these facts to deny a reduction in Diggins's sentence – to the very range that the Commission has now found appropriate for precisely this kind of offense conduct and this extent of criminal history – would doubly penalize Diggins for his behavior.  <u>See, e.g.</u>, <u>United States v. Pope</u>, No. 1:05CR00008, 2008 WL 700971, *1 (W.D. Va. Mar 13, 2008) (granting a sentence reduction over the Government's objection because the

Guidelines provide a mechanism for considering the conduct underlying the offense and prior convictions).  The Court therefore will not deny Diggins's motion on the grounds of his offense conduct and his criminal history.

       2.  <u>Post-Sentencing Conduct</u>

The Government also argues that a sentence reduction is not warranted because of Diggins's post-sentencing conduct.  The Court again disagrees.

Courts in the Southern District of New York tend to require that post-sentencing conduct meet a threshold level of seriousness before they will deny a motion because of that conduct.  <u>Compare</u> <u>United States v. Davis</u>, 577 F. Supp. 2d 665, 667 (S.D.N.Y. 2008) (finding that a sentence reduction was <u>not</u> warranted because the defendant, while in custody, repeatedly stabbed a corrections officer in the head and neck with a sharpened piece of metal that has been fashioned into a knife-like weapon), <u>with</u> <u>United States v. Marzouca</u>, No. 88-CR-0377 (CPS), 2008 WL 2169517, *3 (S.D.N.Y. May 21, 2008) (finding that a sentence reduction was warranted even though the defendant had been disciplined 16 times over a 20-year term of incarceration, both because most of the incidents were not serious, and because the most serious incident, assault causing serious injury to a fellow inmate, occurred over 14 years before the defendant filed his motion).  Here, the Government has been able to establish

Diggins's involvement during his incarceration in only one fight, a fight which took place in the context of what was arguably a race riot.  In addition, the Government has been unable to disprove Diggins's allegation that he fought solely in order to defend himself.  Furthermore, although Diggins's post-sentencing conduct includes some troubling behavior, it also includes some very encouraging behavior.  On the whole, the Court concludes that Diggins's conduct does not meet the threshold level that courts in this District have required in order to deny a § 3582(c)(2) motion on post-sentencing conduct grounds.

### 3.   Conclusion

The Court finds that the Government's objection to a reduction in Diggins's sentence on the basis of public safety considerations lacks merit.

### III.   Conclusion

For the reasons stated above, the Court REDUCES Diggins's sentence from 30 to 24 months on the drug count.  Diggins's sentence of 60 months on the gun count, to be served consecutively, remains unchanged.

SO ORDERED.

Dated:    New York, New York
          May 8, 2009

                                        _(Kimba M. Wood)_

                                        KIMBA M. WOOD
                                        United States District Judge

11